43 C.C.P.A. (Patents).

**Ernest D. GARRETT, Appellant,**

v.

**Joseph B. COX, Appellee.**

**Patent Appeal No. 6198.**

United States Court of Customs and Patent Appeals.

May 15, 1956.

**344**

Edward Taylor Newton, Atlanta, Ga. (John B. Brady, Washington, D. C., of counsel), for appellant.

Elmer A. Buckhorn, Kenneth S. Klarquist, and Buckhorn & Cheatham, Portland, Ore., for appellee.

Before JOHNSON, Acting Chief Judge, and WORLEY and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter to Joseph B. Cox, the junior party and appellee here. The invention in issue is a chain for a chain saw, defined in the single count as follows:

"A chain for a chain saw comprising successive groups of separately formed link members pivotally joined and overlapped in tandem formation to permit driving of the same when looped around a pair of sprockets, means on said chain cooperating with a guide blade provided on said saw for guiding said chain in a true cutting plane, a pair of cutting links in each of said groups, said cutting links being spaced longitudinally along said chain and provided with alternate right and left-hand cutting teeth, and an integrally formed leading and trailing depth gauge on each of said cutting links."

The count originated as claim 1 of patent No. 2,558,678, granted June 26, 1951, to the party Garrett, appellant here, on an application filed May 23, 1949, which claim was copied by Cox in application No. 250,282, filed October 8, 1951. Since Cox filed after issuance of the Garrett patent, he has the burden of proving priority beyond a reasonable doubt. Lichtenwalter v. Caron, 158 F. 2d 1011, 34 C.C.P.A., Patents, 792.

Cox took no testimony, but relied on his application No. 680,549, filed July 1, 1946, of which his application No. 250,-282, involved in the interference, purports to be a division. Garrett alleges no date of invention as early as July 1, 1946, and the testimony taken by him was directed toward showing that the earlier Cox application does not afford proper support for the interference count.

The count recites a chain structure comprising groups of pivotally connected link members, each group including a pair of cutting links provided with alternate right and left-hand cutting teeth, and each cutting link having integrally formed leading and trailing depth gauges. In the Garrett device the depth gauges are in the form of projections from each cutting link, one ahead of the cutting tooth and one behind it. When the saw is in use the projections enter

the kerf which is being cut and, when the tooth has cut to a predetermined depth, the gauges engage the bottom of the kerf, thus preventing too deep a cut which might result in stalling the saw.

The drawings of the Cox applications, Nos. 250,282 and 680,549, are identical and the specifications differ only in minor respects. Therefore, if the earlier filed application will support the count, so will the later one.

The earlier Cox application, No. 680,549, discloses two principal embodiments of his invention, one being illustrated in Figs. 1 to 4 and the other in Figs. 5 to 8. The former embodiment shows a saw chain formed of alternately arranged cutting links and spacer links, pivotally joined at their ends. Each cutting link comprises a main flat body portion which lies in the plane of movement of the saw chain, and an offset portion which is inclined toward the right or left of that plane and carries a cutter flange or tooth. The cutting links are so arranged in the chain that the offset portions project alternately to the left and right. Each cutting link has a leading depth gauge but there are no trailing depth gauges. The gauges are in the form of projections ahead of and spaced from the portion of the link which carries the cutting flange. The embodiment of Figs. 5 to 8 of the application is generally similar to that of Figs. 1 to 4, but the cutting links are shaped somewhat differently and the leading depth gauges are omitted, while a trailing depth gauge is provided in the form of a toe at the rear end of each cutting link, which rides against the bottom of the kerf.

Neither of the principal embodiments above described satisfies the requirements of the interference count, since each of them shows only one depth gauge for each link, whereas the count calls for two. It was held by the board, however, that the modifications contained in Figs. 9 and 10 of the application, together with the disclosures of Figs. 1 to 8, are sufficient to support the count.

Figs. 9 and 10 are described in the specification of application No. 680,549 as follows:

"Fig. 9 is a side view of a cutter link of a modified form for use in chains as illustrated in Fig. 1;

"Fig. 10 is a cutter link of alternative form for use in chains of the kind shown in Fig. 5;

\* \* \* \* \* \*

"As a modification of the cutter link shown in the saw chain of Fig. 4, links as in Fig. 9 might be used. Each of these links 20b is formed with a depth gauge portion 75 at its rear end extended to the level of the gauge portion 36, and the cutter flange 45 shortened accordingly.

"Also, links as used in the chain of Fig. 5 might be modified as shown in Fig. 10 wherein the link blank is equipped with a depth gauge portion 79 forwardly of the cutter portion."

In the application drawings, however, Fig. 10 shows a link which corresponds generally to that of Fig. 4 and bears the reference characters 20b, 75, 36, and 45, while Fig. 9 shows a link similar to that of Fig. 5, bearing the reference character 79. The above quoted portion of the specification, therefore, is not properly applicable to the drawings, and it is evident that, as found by the board, there has been an interchanging of "Fig. 9" and "Fig. 10" either in the drawing or in the specification, and that in order to secure correspondence, the application must be considered as if those figure numbers were reversed in one or the other of those places. We agree with the board that this is an error of an obvious clerical nature which might properly have been corrected by the Primary Examiner in accordance with the practice set forth in the Manual of Patent Examining Procedure, Second Edition, Sections 608.02(W) and 1302.-04, and which does not affect the sufficiency of the application disclosure.

Since Figs. 9 and 10 relate to modifications of the structure of individual links only, it is evident that the links shown in those figures are to be arranged in the same manner as the corresponding links in Figs. 1 to 8, with their cutting

teeth projecting alternately to the right and left. It is also evident that each of the links shown in Figs. 9 and 10 is provided with integrally formed leading and trailing depth gauges. The count is therefore readable on the modifications of Figs. 9 and 10, if those modifications are sufficiently disclosed to constitute operative structures.

It is contended by Garrett that there is nothing in Figs. 9 and 10 to show that the cutter links are other than flat, or that the teeth are offset or shaped to provide clearance at critical points. We think those contentions are correct so far as Figs. 9 and 10, considered alone, are concerned, but we agree with the board that those figures are not to be considered alone but in conjunction with Figs. 1 to 8 and the relevant portions of the specification. It was clearly the purpose of Figs. 9 and 10 to show how additional depth gauges might be applied to the cutter links of Figs. 1 to 8, and not to show a complete reconstruction of those links. We are of the opinion, therefore, that any person skilled in the art, in following the disclosure of the earlier Cox application, would apply to the links of Figs. 9 and 10 the appropriate clearances and offsets disclosed in connection with Figs. 1 to 8.

■ A considerable portion of the testimony offered by Garrett is directed to explaining the disclosure of the application relied on by Cox. It is well settled that testimony will not ordinarily be received for such a purpose, In re Oppenauer, 143 F.2d 974, 31 C.C.P.A., Patents, 1248, and authorities there cited, and there appears to be no sufficient reason for making an exception in the present case. However, we have considered all the testimony presented on behalf of Garrett, but agree with the board that such testimony does not justify a holding that the disclosure of the earlier Cox application is insufficient to support the interference count. As pointed out by the board, Garrett's witnesses were asked to consider Figs. 9 and 10 alone, thus their testimony is not convincing as to what is disclosed by the application as a whole. No witness was asked whether an operative device could be produced from Figs. 9 or 10 in conjunction with the entire application disclosure, which is the issue presented here.

Some of the witnesses produced by Garrett indicated that, in their opinion, the structures shown in Figs. 9 and 10 of Cox might be impracticable or might crack when in use. However, it does not appear that any of the witnesses had actually tried to make or use such structures and, under those circumstances, their testimony is not sufficient to show inoperativeness.

■ For the reasons given, we are of the opinion the application of Cox, No. 680,549, as well as his application No. 250,282, contains a disclosure supporting the count of the instant interference. Cox is therefore entitled to a date of July 1, 1946, when that application was filed, for conception and constructive reduction to practice of the invention in issue. That date being prior to any alleged by Garrett, Cox must prevail.

■ It is contended by Garrett that the board erred in failing to dissolve the interference upon motions filed by him. Those motions were based upon the failure of Cox to comply with certain requirements of Patent Office rules with respect to identifying the claim copied for interference and applying it to the disclosure of his application; in failing to file an affidavit that he made the invention defined in that claim prior to Garrett's filing date; and on the failure of the examiner to call the case to the attention of the commissioner under Patent Office Rule 205(b), 35 U.S.C.A. Appendix, or to indicate in the declaration of the interference whether he considered the Cox application here involved to be a division or continuation of application No. 680,549. The matters referred to are not ancillary to priority and, accordingly, cannot properly be considered by this court on appeal in an interference proceeding. Gowen v. Hendry, 37 F.2d 426, 17 C.C.P.A., Patents, 789, and Urschel v. Crawford, 73 F.2d 510, 22 C.C.P.A., Patents, 727, and cases there cited. The alleged failure of Cox or the examiner to comply with the rules has

no bearing on the question whether Cox or Garrett is the prior inventor of the subject matter here in issue. Whether such failure precludes Cox from obtaining a patent including the interference count is an ex parte matter which is not involved here.

Garrett also raised, by motion to dissolve, the contention that Cox was estopped to make the count by reason of his delay in presenting it. As to that matter we are in agreement with the board's view that, since Cox copied the claim corresponding to the count from Garrett's patent within four months after the issuance thereof, and since he called the attention of the Patent Office to the fact that the claim was so copied within nine months after the patent issued, there can be no estoppel, 35 U.S.C. § 135.[1]

The decision of the Board of Patent Interferences is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL and COLE, Judges, because of illness, did not participate in the hearing or decision of this case.

43 C.C.P.A. (Patents)

**Donald M. YOUNG and William N. Stoops, Appellants,**

v.

**Orville H. BULLITT, Jr., Appellee.**

**Patent Appeal No. 6202.**

United States Court of Customs and Patent Appeals.

May 15, 1956.

1. "Sec. 135. Interferences

\* \* \* \* \*

"A claim which is the same as, or for the same or substantially the same sub-

348

Before JOHNSON, Acting Chief Judge, and WORLEY and JACKSON (retired), Judges.

ject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one

year from the date on which the patent was granted."