50 CCPA

**Application of Charles A. STOKES, George B. Kistiakowsky and George E. Engelson.**

**Patent Appeal No. 6864.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

Dos T. Hatfield, Washington, D. C. (Kenway, Jenney & Hildreth, L. William Bertelsen, Herbert P. Kenway, Boston, Mass., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 46 to 60 inclusive, the only remaining claims of the application Serial No. 129,089 filed November 23, 1949 for PRODUCTION OF METALLIC OXIDES.

The reference relied on by the examiner and board is

Saladin et al    2,823,982    Feb. 18, 1958
(filed Feb. 11, 1949)

Interference No. 87,281 was declared on January 25, 1955 between appellants' application and the application which matured into the Saladin et al. patent, supra. That interference was dissolved *pro forma* without regard to the merits on the basis of a joint motion in which the parties agreed that the single count in issue was not patentable to either party. The application of Saladin et al., the senior party, was subsequently passed to issue without the claim corresponding to the interference count.

Claims 46 and 60, illustrative of the appealed claims, read:

"46. The process of producing finely divided oxides of a metal selected from the group consisting of aluminum, titanium, silicon, zinc, antimony, chromium, beryllium, zirconium, · cobalt, nickel, cadmium, molybdenum and vanadium, which comprises vaporizing a halide of said metal, introducing said halide vapor free from contamination by hydrocarbon gas as a non-ignitable stream into an elongated reaction zone, simultaneously surrounding said stream with an annular flame containing water vapor formed therein as one of the combustion products and causing said stream to become intimately admixed with the combustion products in said flame, thereby hydrolyzing the metal halide vapor to the corresponding metal oxide by reaction with the water produced in said flame, and recovering the resulting pigment."

"60. The process of producing finely divided aluminum oxide comprising vaporizing aluminum chloride, mixing said vapor with dry air to form a non-ignitable mixture, introducing said vapor mixture free of contamination by hydrocarbon gas

as a stream into an elongated reaction zone, simultaneously surrounding said stream with an annular flame produced by burning a gaseous hydrocarbon in air and containing water vapor formed therein as a combustion product and causing said stream to become intimately admixed with the combustion products in said flame, thereby hydrolyzing the chloride vapor to aluminum oxide by reaction with the water produced in said flame, and recovering the resulting aluminum oxide."

The appealed claims have been refused on multiple grounds. In the first place, the examiner held, and the board agreed, that appellants' application does not support the limitation that the stream or mixture in which the metallic halide vapor is introduced into the reaction zone is "non-ignitable." Additionally, it was held by the examiner that appellants are estopped from obtaining the claims because of their status as junior party in the interference. The board sustained that rejection and also found "no basis for concluding that the procedural steps of the appealed claims differentiate inventively over Saladin et al. to warrant the allowance of the appealed claims."

Appellants' application discloses a novel commercially practicable process for producing a pure finely divided metallic oxide from the corresponding metallic halide. The specific embodiments set forth in the application relate solely to the production of finely divided aluminum oxide. The examiner did not consider the production of the other claimed species of metallic oxides by appellants' process to be patentably distinct from appellants' production of aluminum oxide. Thus we shall assume that appellants' specific embodiments relating to the production of aluminum oxide are equally applicable to the production of the other specific oxides recited in the illustrative claim, supra.

Appellants' novel process consists in feeding aluminum chloride to a heated vaporizer where it is caused to sublime and then conveying the resulting aluminum chloride vapors into one end of a reactor "either under their own vapor pressure or by means of dry heated air" with appellants preferring the latter. Simultaneously with the injection of the aluminum chloride vapor, a mixture of air and hydrocarbon gas, e. g., methane, is introduced into the reactor through a passage surrounding the injector used for the introduction of the vapor, with the passage and the injector terminating in the same plane as shown by the drawing of the application. The air-hydrocarbon gas mixture is caused to burn producing a flame in the reactor and the vapor containing the aluminum chloride flows into the center of the flame mass. Appellants state that the combustion, i. e., the burning, takes place at the moment of introduction of the air-hydrocarbon gas mixture and chloride vapor into the reactor and that the aluminum chloride vapor flowing into the reaction chamber is thereupon instantly hydrolyzed in the flame to finely divided aluminum oxide and hydrochloric acid by the water produced from the burning of the hydrocarbon-gas mixture. The aluminum oxide then passes out of the reactor and may be collected by any suitable means.

Appellants have characterized the reactions in the reactor in accordance with the following equations:

(1) $CH_4 + 2O_2 \rightarrow CO_2 + 2H_2O$
(2) $2AlCl_3 + 3H_2O \rightarrow Al_2O_3 + 6HCl$

Equation (1) refers to the combustion of the hydrocarbon gas, in this case methane, with the production of carbon dioxide and water. Equation (2)[1] refers to the hydrolysis of aluminum chloride with the production of aluminum oxide and hydrogen chloride or hydrochloric acid.

1. Mellor's "Modern Inorganic Chemistry," p. 669 (1939) and "Inorganic Chemistry" by Fritz Ephraim, 4th Ed., p. 442 (1947), indicates that equation (2) could well be considered a combination of two separate consecutive reactions represented by the following equations:

$AlCl_3 + 3H_2O \rightarrow Al(OH)_3 + 3HCl$
$2Al(OH)_3 \rightarrow Al_2O_3 + 3H_2O$

Our first task is to decide whether the limitation that the stream or mixture in which the metallic halide vapor is introduced into the reaction zone is "non-ignitable" is supported by appellants' disclosure. Since the application does not so specifically characterize the stream or mixture as non-ignitable, that feature must be necessarily inherent in appellants' disclosure in order to avoid the rejection based on insufficient disclosure. After a careful consideration of the application we think that feature is necessarily inherent in appellants' process.

The principal object of appellants' invention is to provide a novel commercially practicable process for producing a pure finely divided metallic oxide such as aluminum oxide. Appellants do this by a particular process which involves rapidly hydrolyzing a metallic halide such as aluminum chloride in the center of a flame mass. It seems to us that appellants contemplate that the metallic halide in their disclosed process undergoes only a hydrolysis as opposed to any other reaction such as an oxidation. In their application appellants state:

"* * * The aluminum halide is rapidly *hydrolyzed* * * *.

* * * * * *

"* * * The reaction proceeds in accordance with the following general equation:

* * * * * *

"(2) $2AlCl_3 + 3H_2O \rightarrow Al_2O_3 + 6HCl$

* * * * *

"* * * aluminum chloride vapor * * * is instantly converted to its components * * * by *hydrolysis* * * *." [Emphasis added.]

Original claim 1 of the application:

"1. The process of producing a finely divided metal oxide from a metal halide which *consists in hydrolyzing* the metal halide in the water of combustion of a hydrocarbon flame." [Emphasis added.]

Furthermore, appellants distinguish a hydrolysis of an aluminum halide from an oxidation of aluminum halide. In their application they state:

"* * * While substantially pure finely divided aluminum oxides have been prepared by processes such as * * *, *oxidation of aluminum halides and hydrolysis of aluminum halides, no commercially* practicable process has been devised, * * *." [Emphasis added.]

Moreover, we believe that the operating conditions outlined in appellants' application indicate that appellants' metallic oxide is produced by hydrolysis only of the corresponding halide. Appellants in the application disclose:

"* * * The aluminum halide is *rapidly hydrolyzed in the flame* to aluminum oxide * * *.

* * * * * *

"* * * Combustion takes place *at the moment of introduction of the mixture into the reactor* * * *.

* * * * * *

"* * * the air and aluminum chloride vapor mixture *flows* * * *into the reaction chamber* * * * in the center of the flame mass [2] where it is instantly converted to its components of aluminum oxide and hydrochloric acid * * *." [Emphasis added.]

Since appellants wish to avoid oxidation of the metallic halide vapor and since burning of the vapor obviously

2. Mellor's "Modern Inorganic Chemistry," pp. 379–380 (1939), states that in a burning of a hydrocarbon-air mixture in its most efficient form, a flame can be seen to consist of two cones. Those cones, it is said, comprise a very pale blue outer mantle surrounding a bright blue inner cone. Inside the inner cone is a region of unburnt gas. The probable processes taking place in the flame are indicated to be: (1) a vigorous reaction at the *surface* of the inner cone, a partial oxidation of the gas taking place there as well as a high temperature being developed and (2) in the outer cone, a complete combustion taking place.

would involve oxidation, it is apparent that the stream in which the vapor is introduced must not burn and thus the stream must be "non-ignitable." [3] We think this result is attained. The fact that combustion of the hydrocarbon gas takes place at the moment of introduction of the halide vapor into the reactor, and that the halide vapor is introduced in the center of the flame mass indicates that hydrolysis would take place before any burning of the halide vapor would occur. Obviously no oxygen could reach the flow of halide vapor before hydrolysis takes place. On that basis, we are convinced that appellants' application inherently supports the recitations of a non-ignitable stream or mixture.

In reaching our conclusions, we have not overlooked the fact that the specification reads:

" * * * Aluminum chloride is fed to a heated vaporizer where it is caused to sublime. The resulting vapors are then conveyed into one end of the reactor either under their own vapor pressure or by means of dry heated air. * * *

* * * * *

"Although the chloride vapors may be caused to flow by reason of their own vapor pressure we prefer to employ air as a carrier gas and, to that end, air is introduced into a dryer * * * under pressure * * *."

It seems clear to us that the words "under their own vapor pressure" lends credence to our determination that "non-ignitable" is supported by the specification. The words "by means of dry heated air" and "employ air as a *carrier gas*" [emphasis added] can only indicate that appellants would use air in such a manner as to insure that it would function solely as a carrier without resulting in the burning and oxidation of the metallic halide vapor, which they wish to avoid.

The board referred to the fact that appellants unsuccessfully moved to add to the interference, supra, a proposed count E which specifically called for a mixture of a metallic chloride vapor and oxygen-containing gas which was *ignitable*. We agree with the board that the proposal of that count is inconsistent with appellants' contention here that they use a mixture which is inherently non-ignitable. However, we do not find in the application any support for appellants' previous contention that they could make proposed count E. In our opinion appellants were in error in that contention and we believe their disclosure supports only the use of a non-ignitable stream.

■ We turn next to the rejection of the appealed claims growing out of the dissolved interference with the application which matured into the Saladin et al. patent. Saladin et al. disclose a process for producing oxides of aluminum, titanium, silicon, zirconium and tin from chlorides of these metals. A stream of heated chloride vapor and oxygen or oxygen-containing gas is charged into a reaction chamber within an auxiliary flame formed by the combustion of hydrogen, carbon monoxide, illuminating gas, benzine vapors or oil vapors. Contact of said stream with the auxiliary flame will cause ignition of the chloride to convert it into a metal oxide. As acknowledged by the solicitor in his brief, when aluminum oxide is produced, the ignition reaction proceeds in accordance with the equation:

$$[(3)]\ 4AlCl_3 + 3O_2 \rightarrow 2\,Al_2O_3 + 6\,Cl_2$$

We think that the process of Saladin et al. is restricted to an oxidation of the metallic halide. That view is supported from equation (3) supra, and by a careful analysis of the patent. Claims 1 and 11 of the patent respectively, read:

"1. The method of producing a finely divided oxide of a metallic element from those in groups 3 and 4

3. Webster's New International Dictionary (1930) defines *ignite* as: " * * * ; to begin to burn."

of the periodic system that form volatile chlorides, which comprises *continuously burning a mixture of a vaporized anhydrous chloride of said element and oxygen containing gas * * *.*" [Emphasis added.]

"11. The process of producing a very finely divided aluminum oxide which comprises continuously supplying into a reaction zone a stream of an ignitable homogeneous mixture of a vaporized anhydrous aluminum trichloride and oxygen containing gas and *igniting* said stream in said ,zone and maintaining it in a flaming state by contacting it continuously with an auxiliary flame sustained by a combustible gas inflow separate from said stream, *thereby decomposing and oxidizing the aluminum trichloride to form a very finely divided aluminum oxide.*" [Emphasis added.]

The patentees also state in their specification:

"* * * Since in this process the metal chloride vapor is exposed to the reaction in a state of homogeneous admixture with at least part of the oxygen required for its transformation under formation of flames, the reaction, once it is started, proceeds much more rapidly than in case the reaction components are mixed only during the reaction. * * *Where the reaction gas does not contain in itself the amount of oxygen required for complete reaction, the missing share is fed to the reaction in the form of any oxygen-containing gas mixture.*" [Emphasis added.]

It further is apparent that the patentees teach away from any hydrolysis in their process. Thus, they state:

"A mixture (reaction gas) of metal chloride vapor and oxygen-containing gas with a temperature above the dew point but not exceeding 500° C. is allowed to flow into the reaction chamber and is ignited therein to form a flame by being contacted therein with an auxiliary flame formed by an exothermic auxiliary chemical reaction. Advantageously *the flame is ignited at a suitable distance from the discharge opening of the reaction gases flowing into the reaction chamber. * **"* [Emphasis added.]

Another portion reads:

"As a combustible gas, hydrogen, carbon monoxide, illuminating gas, * * * can be used. In general, the combustible gas and the oxygen-containing gas fed at least partly separately for its combustion are advantageously delivered separately around the reaction gas current. * * * Where carbon monoxide is used as a combustible gas, the same can be fed directly around the reaction gas current without causing a deposit at the outlet opening of the reaction gas, since the carbon monoxide reacts so slowly with the oxygen contained in the metal chloride vapor that it ignites with the same only at a certain distance from the outlet opening and only there inflames the reaction gas. In this case the separately fed oxygen-containing gas may be fed around the carbon monoxide. *Where hydrogen-containing combustible gases are fed, on the other hand, the oxygen-containing gas is advantageously fed in the intermediate layer, for the following reason: Since the hydrogen fed in the intermediate layer would react very quickly with the oxygen contained in the metal chloride vapor under formation of water, which in turn would cause an immediate decomposition of the metal chloride, the reaction gas outlet would be obstructed in a short time.*" [Emphasis added.]

In support of the rejection on estoppel, the examiner has compared Example 5 of the Saladin et al. patent with appellants' run 62. Run 62 employs a stream of aluminum chloride mixed with air as a carrier, a preferred embodiment

of appellants' process. The examiner stated:

> "* * * In Example 5 of Saladin et al the stream containing the aluminum chloride vapor is formed so that the mixture contains one volume of aluminum chloride to three volumes of oxygen. * * * In Run 62 the chloride fed, in pounds per hour, is 12.7. The volume of *carrier air* fed, in cubic feet per hour, is 500. Stoichiometric calculation shows that a stream prepared in this manner contains one volume of chloride vapor to 2.92 volumes of oxygen. Thus, if it can be held that the claims in their amended form (i. e. reciting non-ignitable) are supported by the disclosure of the instant case, they are equally supported by the disclosure of the Saladin et al patent * * *." [Emphasis added.]

We do not agree with the examiner's conclusion. The process of Example 5 provides the oxygen in pure form while the oxygen in Run 62 is mixed with the other components of air, resulting in a different oxygen concentration based on the total volume in the two mixtures. Appellants have provided an affidavit of one who is both a research chemist and chemical engineer indicating that the *"concentration* of the reactants in the system is an important factor." [Emphasis added.] It is not apparent to us from the record that the two processes which have different concentrations of oxygen would involve the same reactions merely because the ratio of metallic halide vapor to *total* oxygen is approximately the same in both cases.

██ In his answer, the examiner stated that the rejection on the ground of estoppel is "predicated on" an instruction in the "Manual of Patent Examining Procedure" which states: "If following the dissolution of the interference any junior party files claims *that might have been included in the issue of the interference* such claims should be rejected on the ground of estoppel." [Emphasis added.] Since Saladin et al. introduce the metallic halide vapor into the reaction zone in an ignitable stream which will cause its oxidation, it is apparent that Saladin et al. do not support the appealed claims, limited as they are to the introduction of the vapor in a non-ignitable stream which is subjected to hydrolysis. Thus the appealed claims could not have been included in the issue of the interference and therefore appellants are not estopped from asserting them.

In affirming the examiner, the board raised the "question of whether the appealed claims can be considered to differentiate patentably over the claims and procedure of Saladin et al." and apparently ruled that the appealed claims do not "differentiate inventively over" Saladin et al. The solicitor regards this as a "third ground of rejection." Certainly that contention of the board does not come within the examiner's reasons for his estoppel rejection as discussed above. Appellants urge that there is no "third ground of rejection," apparently because the board does not specify that it is advancing a new ground of rejection. It does not appear necessary to determine whether the board made a new rejection or whether it could properly do so.

Even if it be assumed that the board did intend to reject the claims on the basis of a failure to differentiate patentably over Saladin et al. and that matter is before us, we do not think that such rejection can be sustained. The board relies on the position that there is no basis in appellants' disclosure for concluding that either the metal chloride per se or as admixed with air is necessarily or inherently "non-ignitable" plus the fact that neither air nor oxygen is excluded from the claims. Our finding that appellants are concerned exclusively with the hydrolysis of the metallic halide vapor and that "non-ignitable" is supported demonstrates that that alleged "third ground of rejection" upon Saladin et al. is in error.

In view of the foregoing, the decision of the board is *reversed.*

Reversed.