51 CCPA

John E. MAHAN, Appellant,

v.

Thomas F. DOUMANI and Clarence S. Coe, Appellees (two cases).

Patent Appeal Nos. 7014, 7015.

United States Court of Customs and Patent Appeals.

June 25, 1964.

related interferences, Nos. 87,638 and 89,790, consolidated for review by this court as a result of motions by appellant. The same inventors are involved in each interference and the subject matter is closely related. In each case, appellees were awarded priority below on the basis of the disclosure in Patent No. 2,645,079, which issued from application Serial No. 539,030 filed June 6, 1944 (hereinafter the 1944 application). Neither party took testimony.

In No. 7014, appellant relied on the filing date of his patent application,[1] which was earlier than the filing date of appellees' application.[2] However, appellees' application is a continuation-in-part of the application maturing into the above mentioned patent, and they moved to shift the burden of proof to appellant in the interference. The primary examiner denied the motion and the case went to final hearing on the issue of whether appellees were entitled to rely on the filing date of their parent 1944 application. The board reversed the examiner, finding support for the count in the 1944 application.

Similarly, in No. 7015, appellant relied on the filing date of another application[3] which was senior to appellees' continuation-in-part application. Appellees relied on the filing date of the same application as in No. 7014 and moved to shift the burden of proof to appellant on the basis of the filing date of the 1944 application. Appellees' motion was denied by the examiner for lack of support in the parent, but the board reversed at final hearing.

Thus, the sole issue for our determination is whether the 1944 application of appellees provides support for the counts in the two appeals.

The subject matter in issue relates to rocket propulsion fuels and methods of developing thrust by hypergolic[4] reac-

J. Arthur Young, Donald J. Quigg, L. Malcolm Oberlin, Bartlesville, Okl., Paul L. Gomory, Washington, D. C., for appellant.

Laurence & Laurence, Washington, D. C., (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decisions of the Board of Patent Interferences in two

1. Serial No. 204,074 filed January 2, 1951.
2. Serial No. 261,184 filed December 12, 1951.
3. Serial No. 254,970 filed November 5, 1951.
4. Webster's Third New International Dictionary (1961) defines "hypergolic" as "igniting upon contact of components without spark or external aid."

tion of fuel and oxidizer in a rocket combustion chamber.

The count in No. 7014 reads:

"1. A method of rocket propulsion which comprises injecting separately and essentially simultaneously into the combustion chamber of a rocket motor a hypergolic fuel consisting essentially of diethyl disulfide and an oxidizer selected from the group consisting of red fuming nitric acid and white fuming nitric acid, in an amount and at a rate sufficient to initiate a hypergolic reaction with and to support combusion of the fuel."

The count in No. 7015 reads:

"1. In the method for developing thrust by the combustion of bipropellant components in a combustion chamber of a reaction motor the steps comprising separately and simultaneously injecting a stream of an oxidant component and a fuel component consisting essentially of methyl thiophene into contact with each other in the combustion chamber of said motor, in such proportions as to produce spontaneous ignition."

The specification of the 1944 Doumani et al. application, on which appellees rely to support the counts, relates to "jet-propulsion motors" which are defined as

"* * * motors which derive their driving power from the escape through a jet or nozzle, of the relatively large volume of products resulting from the combustion of a fuel by means of an oxidizing agent. The jet may be exhausted into the open air as in the rocket type of motor or it may be trained on a movable piece of machinery such as the blades of a fan as in the turbine type of motor."

The specification first discusses a number of fuels, particularly nitrogen-containing compounds in admixture with hydrocarbon fuels. Then oxidizers are listed where necessary "with the above fuels." The oxidizers listed include both white and red fuming nitric acid. In discussing the combustion chamber, the specification states:

"The combustion chamber may be provided with an igniting device such as a spark plug or a detonating device where necesary, although in certain instances the contact of the fuel with the oxidizer produces spontaneous combustion."

The specification concludes with a paragraph beginning:

"Besides the above nitrites and nitrates, other organic compounds have been found useful as fuels or fuel additives for jet-propulsion motors."

Included in this paragraph is a large number of compounds, among which appear "* * * thiophene, *methyl*, ethyl, polymethyl, and polyethyl*thiophenes*, * * *" and "dimethyl, *diethyl*, phenylisopropyl, and cycyclopentyl sulfides, and the corresponding *disulfides*, sulfoxides, and sulfones, * * *." (Emphasis supplied.)

The examiner denied appellees' motion to shift the burden of proof, saying:

"* * * the earlier Doumani et al application is lacking in a specific embodiment, such as is required under 35 USC 112, and Rule 71, to support the present count * * *."

He reasoned that

"There is no indication in what respect these 'other' fuels are equivalent to the nitrites and nitrates, nor in which of the several jet propulsion systems disclosed they are to be used. More specifically, there is no indication which of these 'organic compounds' listed on pages 9 and 10 [the concluding paragraph] will react spontaneously and which will require a spark plug for ignition. * * *

"Nor is there any indication which of the oxidizers listed on page 7 in the earlier Doumani et al application will react spontaneously with diethyl disulfide. It is a well known

fact that there is a specificity, or selectivity of reaction between oxidizers and fuels, in order to produce a hypergolic reaction there-between. In other words, where one fuel will ignite spontaneously with a specific oxidizer, another fuel may not. The most that can be said of diethyl disulfide, even if it were mentioned specifically, as ascertained from the disclosure, is that it is a 'fuel,' with no indication of whether it is hypergolic or nonhypergolic."

In a split decision, the board reversed.

The majority stated:

"It is not necessary that each limitation in a count must be expressly set forth in haec verba in the disclosure relied upon. It is sufficient if, as in this case, the specification is so worded that the necessary and only reasonable construction to be given to disclosure by one skilled in the art is one which will lend support to each positive limitation in the count; Binstead et al. v. Littman et al. 44 CCPA 839, 242 F.2d 766, 718 O.G. 439, 113 USPQ 279, 282. Since Doumani et al's. disclosure at page 8, lines 12 to 14, conforms to Mahan's definition of a hypergolic fuel we will consider this limitation in the count to be supported by the earlier Doumani et al. specification.

"The red and white fuming nitric acids are disclosed on page 7, lines 26 to 33. Contrary to the Examiner's statement on page 3, lines 18 and 19, diethyl disulfide is specifically disclosed at page 10, lines 18 to 20; Garrett v. Cox, 43 CCPA 927, 233 F. 2d 343, 708 O.G. 262, 110 USPQ 52; Bluestone v. Schmerling, 46 CCPA 842, 265 F.2d 948, 744 O.G. 900, 121 USPQ 417, 419; Te Grotenhuis v. Yaeger, 48 CCPA 1058, 290 F.2d 951, 772 O.G. 15, 129 USPQ 416. Under the practice set forth in these citations, and contrary to the Examiner's position (page 6, lines 3 to 5 up), Doumani et al. were

justified in piecing together portions of an earlier disclosure to meet the terms of the count." [Emphasis present.]

The majority was of the opinion that "no elaborate experimentation by a person skilled in the art would be necessary" to determine whether spontaneous combustion would result with the fuels and oxidizers of the counts.

The dissenting member of the board found the parent specification lacking in disclosure of the principle of, or the specific conditions necessary for, combining the reactants of the counts to initiate a hypergolic reaction. On reconsideration, the dissent said:

"In my judgment the 1944 specification not only fails to teach practice of the specifically recited features of the count of use of a fuel *consisting essentially* of diethyl disulfide and an oxidizer, selection of red or white fuming nitric acid as the oxidizer, and use of rate and ratio sufficient to initiate a hypergolic reaction, but it leaves the persons skilled in the art lost in a sea of literally hundreds of thousands of alternatives, instead of setting forth (35 U.S.C. § 112)

" 'the best mode contemplated by the inventor of carrying out his invention.' " [Emphasis present.]

Appellant contends that, in order for appellees to rely on their 1944 application, 35 U.S.C. § 120 requires that the parent application must contain "a written description of the invention," as defined in 35 U.S.C. § 112, and that there is no written description of the invention in the 1944 application. Appellant's brief states:

"The invention of the counts resides in the discovery that methyl thiophene and diethyl disulfide are hypergolic when mixed with an oxidant in a reaction motor, that is, that spontaneous ignition will occur under these conditions * * *. There is no written description of

this invention in the 1944 application."

The compounds employed in the counts are "suggested," appellant argues, "amidst a disclosure of thousands of alternates * * * to the 'nitrates and nitrites of this invention'." The disclosure in the 1944 application does not give any "certain instance" where a fuel is hypergolic, although it recognizes that "in certain instances," spontaneous combustion may occur.

Appellant argues that the 1944 application has no written description of the specific fuels in combination with the specific oxidizers in the proportions and conditions required by the counts. The specific amounts of each material must be shown and the rate of mixing must be precise in order to result in a hypergolic reaction.

Appellees take issue with the contention of appellant that to rely on the 1944 application it must comply with 35 U.S.C. § 120. They argue that section 120 "applies to situations other than interferences" and that in interference situations the rule is "that one is entitled to rely on an application which supports the counts in issue in such manner as to constitute a constructive reduction to practice of the invention defined therein." Appellees rely on Den Beste v. Martin, 252 F.2d 302, 45 CCPA 798; Fried et al. v. Murray et al., 268 F.2d 223, 46 CCPA 914; and Farrington et al. v. Mikeska, 155 F.2d 412, 33 CCPA 1073, as support for the proposition that 35 U.S.C. § 120 does not apply to interference situations.

However, appellees argue that even if section 120 is applicable, the 1944 application does in fact meet the requirements of 35 U.S.C. § 112. They rely on In re Stokes et al., 311 F.2d 826, 50 CCPA 874, where a limitation was found to be inherently supported by the disclosure and state in their brief:

"The majority of the Board had no difficulty in finding that the earlier Doumani et al. application actually discloses the diethyl di-

sulfide and methyl thiophene hypergolic fuels required by the counts * * * but, should this Court disagree, it matters not because the undisputed stubborn fact remains that diethyl disulfide and methyl thiophene do react hypergolically with fuming nitric acid, and this inherently supports the recitation of a hypergolic fuel."

Appellees point out that every limitation of the counts may be found in the specification either expressly or inherently. As a specific example of hypergolicity, appellees rely on the disclosure in the specification of "an example of the operation of a similar motor in which a separate fuel and oxidizer are employed" in which a methyl nitrite-gasoline fuel is "allowed to react" with fuming nitric acid. Appellees contend that the "resulting combustion is spontaneous," and that the disclosure of "the other fuels * * * of this invention," under which the fuels of the counts are listed, are "in effect incorporated by reference into the example as an alternate to the methyl nitrite-gasoline fuel."

It appears that the counts in issue are susceptible to more than one construction when examined *in vacuo*. Appellant contends that "the very essence of the invention" is the discovery that diethyl disulfide or methyl thiophene is hypergolic. Appellees, on the other hand, describe the invention defined by the counts as follows:

"The invention therein resides in a method of operating rocket or jet propulsion motors, by injecting separately and simultaneously into the combustion chamber of the motor a hypergolic fuel i. e. diethyl disulfide or methyl thiophene, with an oxidizer (in Appeal 7014, the oxidizer is specifically red or white fuming nitric acid)."

Since hypergolic fuels are broadly disclosed, and the specific fuels are also disclosed, appellees argue that the "hypergolic" limitation of the counts is satisfied.

The language of the counts lends some credence to the interpretations suggested by each of the parties.

There seems to be little question that each limitation of the counts may be found *somewhere* in the 1944 specification. The issue is whether the broad disclosure that "in certain instances" some fuels may react hypergolically with oxidizers is sufficient to indicate that the combination in the counts of diethyl disulfide or methyl thiophene with oxidizer is hypergolic.

■ We agree with appellant that 35 U.S.C. § 120 is applicable in any situation where one seeks "Benefit of earlier filing date in the United States." No exception has been written into the statute for interference situations. We find nothing in the Den Beste v. Martin, Fried et al. v. Murray et al. or Farrington et al. v. Mikeska cases, supra, which is inconsistent with the law as codified in 35 U.S.C. § 120.

Applying the standard of the first paragraph of 35 U.S.C. § 112 to the facts presented, as required by section 120, we find no error in the analysis of the board.

■ Although there is no express statement in the 1944 application that the particular chemical compounds diethyl disulfide and methyl thiophene are hypergolic, these compounds are specifically suggested as alternate fuels. There is a recognition in the disclosure of the property of hypergolicity in some of the fuels disclosed even though there is no detailed categorization of which fuels are hypergolic and which are not. An igniting device is called for in the specification only "where necessary." In view of the disclosure, we think it likely that one skilled in the art would not employ an igniting device in carrying out the method if one is not needed. There is nothing to indicate that selection of the materials of the count will not inherently produce spontaneous combustion. The affidavit of Scott is not concerned with the fuels of the count. Appellant, and the dissent below, imply that there are certain undisclosed *"specific conditions"* which must be carefully fol-

lowed to carry out the method without an igniting device, and that one skilled in the art would not be aware of these conditions after reading the 1944 application. We do not find this contention persuasive because it would be reasonable to assume that any critical conditions would be defined in the method of the counts. There is nothing to indicate that the conditions of the counts differ from those shown in the 1944 application. Moreover, even if unusual conditions were necessary according to appellant's disclosures, though not recited in the counts, we cannot give weight to the conditions in the absence of the specifications from the record. For similar reasons, the implication that "proportions," or "amounts," or "rates" are required which are different from what one of ordinary skill in the art would employ, must be rejected. It is the established practice to accord counts of an interference the broadest meaning which they will reasonably support. Bocciarelli v. Huffman, 232 F.2d 647, 43 CCPA 873.

We agree with the finding of the board that:

"* * * no elaborate experimentation by a skilled person in this art would be necessary under this disclosure, to determine whether or not mixing diethyl sulfide and fuming nitric acid would give rise to spontaneous combustion. More importantly, and an element that cannot be ignored, is that the Doumani et al. earlier application definitely discloses spontaneous combustion of a fuel and an oxidizer. In short, the first filed Doumani et al. application has a disclosure sufficient to enable one skilled in the art to employ diethyl disulfide with red or white fuming nitric acid * * *."

■ The only reasonable view which we can take of the "hypergolic" aspect of the reaction is that it is inherently met by appellees' 1944 specification. In re Spencer, 273 F.2d 181, 47 CCPA 751.

■ We agree with appellees that "a valid exemplary teaching" of the use of diethyl disulfide is provided by the sug-

gestion to substitute "other fuels" for that of the specific example in the specification in which fuming nitric acid is the oxidizer. The 1944 application, in order to support the counts, need not list the specific fuels of the counts as "the best mode contemplated by the inventor of carrying out his invention" (35 U.S.C. § 112). Only a "written description of the invention" must be found in the 1944 application when considered in its entirety. See Hall v. Taylor (PA 7158), 332 F.2d 844, 51 CCPA ——. 

Finding no error in the decision appealed, we accordingly affirm.

Affirmed.

MARTIN, J., sat but did not participate in decision.