48 CCPA

**Application of Maximilian Paul SCHMIDT.**

Patent Appeal No. 6690.

United States Court of Customs and Patent Appeals.

Aug. 16, 1961.

James E. Bryan, (Washington, D. C., William T. Estabrook, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

SMITH, Judge.

Appellant has appealed from the affirmance by the Patent Office Board of Appeals of the rejection of claims 1, 3, 11, 12, 14, 22, 23, 25, 33, 40, 41, 44, 51, 52, 62, 63, 66, 73 and 74, of appellant's application Serial No. 718,453, filed March 3, 1958, entitled "Process of Making Printing Plates and Light Sensitive Material Suitable for Use Therein."

The claims on appeal relate to three classes of subject matter. 1) Claims 1, 3, 11, 40, 41, 44, 51 and 52 relate to novel compositions of matter, 2) claims 12, 14, 22, 62, 63, 66, 73 and 74 relate to presensitized printing plates and 3) claims 23, 25 and 33 relate to a process for developing a printing plate.

### The Invention

The specification describes the invention as relating to light sensitive materials suitable for the production of lithographic printing plates. The plates are formed by coating a particular type of water-insoluble diazo compound on a suitable base material. The diazo compound is derived from naphthoquinone diazide, and has the chemical constitution of esters or amides of a sulfo acid or a carboxylic acid of these compounds. When the sensitized material is exposed to light through a master, the diazo compound is decomposed in the light struck areas and is converted into an alkali soluble compound, which is then removed by washing the exposed surface with an alkaline solution, thereby leaving the undecomposed diazo compound as the positive image. When used as a lithographic plate, this image is heated to make it receptive to printing inks. However, heating may be omitted, if a resin or fatty acid or both are incorporated in the light sensitive layer with the diazo compound. Some twenty-one specific diazo compounds are disclosed as suitable. The base of the plates may be aluminum or

zinc sheets or foils, roughened by mechanical means if necessary to improve adhesion of the coating material. The plates so produced are said to be sufficiently stable that they may be stored for relatively long periods of time.

## The Claims

The Board of Appeals considered claims 1, 12 and 23 illustrative of the three classes of claims. Claim 1 covers the compound as follows:

1. A compound having the formula

$$X_1 \overset{X}{\parallel} \cdots SO_2 - \overset{R}{\underset{|}{N}} - Y - Z - SO_2 - \cdots \overset{X}{\parallel} X_1$$

in which X and $X_1$ are selected from the group consisting of $N_2$ and O, those attached to the same ring being different, Y is an organic linkage, Z is selected from the group consisting of oxygen and $-NR_1$-radicals, R and $R_1$ are selected from the group consisting of hydrogen, lower alkyl, substituted lower alkyl and aryl radicals, and N, R, and Y taken together form a heterocyclic ring.

Claim 12 covers the printing plate as follows:

12. A presensitized printing plate comprising a base material having a coating thereon comprising a compound having the formula

$$X_1 \overset{X}{\parallel} \cdots SO_2 - \overset{R}{\underset{|}{N}} - Y - Z - SO_2 - \cdots \overset{X}{\parallel} X_1$$

in which X and $X_1$ are selected from the group consisting of $N_2$ and O, those attached to the same ring being different, Y is an organic linkage, Z is selected from the group consisting of oxygen and $-NR_1$-radicals, R and $R_1$ are selected from the group consisting of hydrogen, lower alkyl, substituted lower alkyl and aryl radicals, and N, R, and Y taken together form a heterocyclic ring.

Claim 23 covers the process for developing the printing plate as follows:

23. A process for developing a printing plate which comprises exposing to light under a master a plate having a compound thereon of the formula

$$X_1 \overset{X}{\parallel} \cdots SO_2 - \overset{R}{\underset{|}{N}} - Y - Z - SO_2 - \cdots \overset{X}{\parallel} X_1$$

in which X and $X_1$ are selected from the group consisting of $N_2$ and O, those attached to the same ring being different, Y is an organic linkage, Z is selected from the group consisting of oxygen and $-NR_1$-radicals, R and $R_1$ are selected from

the group consisting of hydrogen, lower alkyl, substituted lower alkyl and aryl radicals, and N, R, and Y taken together form a heterocyclic ring; to thereby form a decomposition product in the light struck areas and removing the decomposition product by treatment with a weakly alkaline solution.

## The References

The references relied upon to support the rejection are:

Belgian Patent (Ostersetzor et al.) —500,222—Jan. 15, 1951

Belgian Patent (Ostersetzor et al.) —508,016—Jan. 15, 1952

Belgian Patent (Ostersetzor et al.) —510,151—Apr. 15, 1952

PB 25,781, Microfilm Frames—549 and 550 released June 13, 1947

Index of German Reports—Research of Kalle & Co. in Report No. RM —168 Gen. Analine.

There is no disagreement regarding the teachings of the three Belgian patents. The claimed subject matter admittedly is disclosed by these patents, but the examiner and the appellant disagree as to the effective filing date of the present application which determines whether these patents are proper references.

The board found it unnecessary also to describe the disclosure of PB 25,781, because there is no argument concerning the actual teaching thereof.

## The Rejections

The Board of Appeals sustained a number of the grounds of rejection advanced by the examiner, and reversed others. The grounds sustained by the board which are here for review are as follows:

(1) The rejection of all the appealed claims on the three Belgian patents, the board affirming the examiner in holding that appellant is entitled only to an effective filing date of March 3, 1958 for the application here in issue.

(2) The rejection of all claims, except process claims 23, 25 and 33, as being barred by the last proviso of Section 3 of Public Law 380, 61 Stat. 795.

(3) The rejection of claims 1, 12, 23, 51, 52, 73 and 74 as too broad and indefinite because of the expression "heterocyclic ring."

(4) The rejection of claims 1, 12, 23, 51, 52, 73 and 74 as failing to particularly point out and distinctly claim the invention, because the expression "organic linkage" is meaningless as a proper definition of the invention.

Since the first ground of rejection applies to all of the appealed claims, it will be considered first.

### 1. *Rejection on the Belgian patents*

Inasmuch as there is no dispute as to the disclosures of the reference patents relied upon and inasmuch as appellant admits that the disclosures of these patents constitute a bar to the allowance of the appealed claims if the present application is not entitled to an effective filing date of certain prior applications, the sole issue requiring decision as to this rejection relates to a matter of law.

The issue of law arises here because appellant contends that the application at bar is a continuation-in-part of application Ser. No. 517,086, filed June 21, 1955, which is, in turn, a continuation-in-part of application Ser. No. 208,055, filed Jan. 26, 1951. It is appellant's position that both of the applications are entitled to the priority date of a corresponding German application filed on Feb. 1, 1950. The examiner and the board have held that the effective date of Belgian Patent 500,222 is April 16, 1951, under In re Ekenstam, 256 F.2d 321, 45 CCPA 1022, and that the instant application is not entitled to the earlier filing date of application Ser. No. 208,055. The basic reason for this holding, as pointed out by the board, is that different applicants are named in the three applications involved.

Application Ser. No. 208,055 is in the name of appellant as sole applicant. This application was abandoned in favor of the continuation-in-part application 517,086 which was filed June 21, 1955, in the name of appellant and 5 other applicants jointly. The present applica-

tion was filed as a continuation-in-part of this joint application. This intermediate continuation-in-part application was abandoned in favor of several continuation-in-part applications which were filed in 1957 and 1958 in the names of six applicants, some as sole applicants and others in the names of various numbers of joint applicants.

The application at bar is one of this last group of applications and was filed in the name of the appellant as sole inventor. The applications asserted by appellant to antedate the Belgian Patent reference, are: The first application, Ser. No. 208,055 which was filed by appellant as the sole inventor; the intermediate continuation-in-part application Ser. No. 517,086 which was filed as a joint application by appellant and five other inventors; and the application here on appeal which was filed as a continuation-in-part of the joint application Ser. No. 517,086 by appellant as the sole inventor.

An applicant's right to rely upon and claim the benefit of the filing date of a previously filed application is based upon 35 U.S.C. § 120, which provides:

"An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States *by the same inventor* shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application." [Emphasis added.]

In applying the statutory language of section 120 requiring that the applications be filed "by the same inventor," the examiner and the board concluded that, since application Ser. No. 517,086 was filed as a joint invention, the inventive identity or authorship is different

from that of the instant application which was filed as a sole invention. Their conclusion was that appellant is not entitled to the benefit of the filing date of the earlier joint application, citing Ex parte Lindeman et al., 107 U.S.P.Q. 331, as authority in support of that conclusion.

Acting under the provisions of the third paragraph of 35 U.S.C. § 116 to show that the co-inventors of application Ser. No. 517,086 were joined as inventors "through error," appellant has filed an affidavit of the co-inventors named in application Ser. No. 517,086, in which they disclaim inventorship of the subject matter described and claimed in the presently involved application; an affidavit of the applicant; and an affidavit of patent counsel of the assignee of the presently involved application.

The real issue in connection with this aspect of the appeal as stated by the board "arises from the differing interpretations of the last paragraph of Section 116 of 35 U.S.C., particularly the expression 'through error,' as applied to the facts of this case." The examiner held that appellant's action in joining with five others in the joint application, although all the co-applicants knew at the time that they contributed separate improvements, was merely poor judgment, that "through error" in section 116 of the statute means "inadvertence, accident or mistake," and that such a deliberate act is not an "error" within the contemplation of section 116.

Appellant contends that what occurred in the intervening joint application was a bona fide mistake, because all the applicants and the attorney prosecuting the joint application believed that the applicants were properly joined. Appellant argues, therefore, that, since the statute uses the word "error," the term is broad enough to include the instant situation, and that there is no justification in law for equating "error" in section 116 with "inadvertence, accident or mistake," as was done judicially in connection with the interpretation of the word "error" in reissues under section 251.

The board's decision affirms the examiner in equating the word "error" in section 116 with the word "error" in section 251 and then with "inadvertence, accident or mistake" on the ground "that logic dictates that the identical word be interpreted identically," since the two sections of the statute were enacted at the same time. Appellant's argument to the effect that if Congress intended that result, it could have said so unequivocally was countered by the board's statement that the same argument applies equally to section 251.

The word "error" used in section 116 is not qualified in any respect. Section 116 is an independent section designed to remedy different situations than those which may be remedied by reissue under section 251.

That a mistake was made in the present case has been conceded. The question, however, is whether this mistake is an "error" which may be corrected as provided in the last paragraph of section 116.

In its decision the board cited a number of decisions to support its position that the word "error" in 35 U.S.C. § 116 has the significance of "inadvertence or mistake." It is our opinion, however, that so interpolating the words "inadvertence or mistake," into section 116, gives much too restricted a meaning to the section. We do not consider the cases cited by the board to be dispositive of the issue here.

In its decision, the board relied heavily upon the decision of the District Court in John Blue Company, Incorporated v. Dempster Mill Mfg. Co., D.C., 172 F. Supp. 23. In this case, the failure to add an inventor to an application which had issued into a patent was held by a District Court judge, who did not distinguish the re-issuance of a patent from the correction of the inventors' names, to be an error of judgment and as such, a deliberate act which the court found to have deprived the deleted joint inventor of his rights in the patent.[1]

In the Blue case, [172 F.Supp. 30] a portion of Senate Report No. 1979, U.S. Code Congressional and Administrative News 1952, p. 2401, June 27, 1952 (referring to sec. 116), was quoted as follows:

"\* \* \* This provision permits a bona fide mistake in joining a person as inventor or in failing to join a person as an inventor to be corrected."

In the present case, a mistake was made in joining the inventors in the intermediate joint application. There is nothing of record from which to question that they believed themselves to be properly joined or that the attorney prosecuting the application likewise believed them to be properly joined.

In the third paragraph of section 116, the word "error" is not qualified except that it "arose without any deceptive intention" on the part of the applicant or applicants as the case may be. Since the error in the present case apparently occurred without any deceptive intention, we find no justification for denying appellant the remedial protection of section 116.[2]

1. In John Blue Company, Incorporated v. Dempster Mill Mfg. Co., 275 F.2d 668, it is noted the Eighth Circuit Court of Appeals did not consider the propriety of the finding and conclusion by the trial court that the omission of Johnston's name as a joint inventor was not such an error as could be corrected under the provisions of Title 35 U.S.C. § 256, but held the patent invalid on the ground that it did not involve invention.

2. The legislative history of the Patent Act of 1952 as set forth in House Report 1923, May 12, 1952 to accompany H.R. 7794 (Reprinted in 34 J.P.O.S. No. 8) contains a reference to sections 116 and 118 as follows:

"Sections 116 and 118 introduced a new element in our statutes. The existing statute is very strict in requiring that only the inventor may apply for a patent. These two sections provide for certain types of situations where it may be impossible for the inventor himself to apply, or where, in the case of a joint invention, one of the joint applicants has been inadvertently erroneously included or a joint inventor inadvertently

We had occasion to state in In re Willingham, 282 F.2d 353, 48 CCPA 727, in regard to the reissue provision of the 1952 Patent Act:

"The reissue provisions of the Patent Act of 1952, like the reissue provisions of the earlier patent statutes, are remedial in nature. They are based on fundamental principles of equity and fairness and should be so applied to the facts in any given case that justice will be done both to the patentee and to the public."

We think the same principles should be applied in interpreting and applying section 116. Our comments in the Willingham decision relative to the expressions "error" and "without any deceptive intention" are equally applicable to section 116. The same reason applies since both sections are remedial in nature and as such should be liberally construed in order that "errors" may be readily rectified.

We hold, therefore, that the "error" which occurred in filing the joint application is of the type which the examiner under the provisions of the last paragraph of section 116 should have permitted appellant to correct by the filing of the instant sole application, which as a continuation-in-part application is entitled, under 35 U.S.C. § 120, to the benefits of the filing date of the earlier application.

The practice approved in In re Roberts, 49 App.D.C. 250, 263 F. 646, 647 and continued by this court in In re Perrin, 142 F.2d 277, 31 CCPA 1041 and In re Strain, 187 F.2d 737, 741, 38 CCPA 933, in which conversion of an application from joint to sole or the filing of a sole application claiming the benefit of the filing date of a prior joint application was permitted on-

ly when the joint application had "been filed through mistake or inadvertence and without fraudulent intent" (In re Roberts, supra), or upon a showing that the joint application was made through "inadvertence or mistake" (In re Strain, supra), arose prior to the enactment of section 116 and when the applicable statute contained no provision comparable to the last paragraph thereof.

It is, we believe, the correct interpretation of congressional intent that the expression "error * * * without any deceptive intention" in section 116 was intended not only to replace the more cumbersome expression "inadvertence, accident or mistake" previously used but was intended to relieve applicants from the narrow application of the old terms as the courts had construed them. Every indicator of legislative intent points in that direction.

The term "the same inventor" as used in section 120 does not have the literal, narrow technical meaning the solicitor would have us assign to it. It must be construed with all other relevant sections of the statute, including sections 116 and 256 and thus it embraces the possibility permitted by sections 116 and 256 that the earlier application may be corrected thereunder by changes in the name or names of the applicants under the conditions stated in section 116.

We hold, therefore, that appellant was entitled under section 116 to correct the errors in the intermediate application filed in the names of joint inventors and under section 120 was entitled as "the same inventor" to the benefits of the filing dates of the earlier co-pending applications. This holding removes the Belgian patents as references and we, therefore, reverse the Board of Appeals in re-

excluded; the sections provide all the safeguards necessary for the inventor." 34 J.P.O.S. 557.

The reviser's note following the text of section 116 (34 J.P.O.S. 593) reads as follows:

"The first paragraph is implied in the present statutes, and the part of the last paragraph relating to omission of an er-

roneously joined inventor is in the Patent Office rules. The remainder is new and provides for the correction of a mistake in erroneously joining a person as inventor, and for filing an application when one of several joint inventors cannot be found. This section is ancillary to section 256."

jecting the instant application on that ground.

## 2. *Section 3 of Public Law 380*

We pass now to the rejection of all the appealed claims (except process claims 23, 25 and 33), on the ground that these claims are barred by the last proviso of Section 3 of Public Law 380, 80th Cong., 61 Stat. 794.[3] The ground of this rejection is that PB report 25,781 is evidence of the fact that the composition of matter covered by these claims was invented in Germany before January 1, 1946.

Appellant concedes in his brief that this report discloses certain compositions of matter of the present invention and that these compositions were synthesized in Germany before January 1, 1946, by one Zahn. Appellant's brief on this point says:

"In P. B. Report No. 25781, * * there are disclosed certain compounds of the present invention. These compounds were synthesized by one Zahn, who at the time was an employee of Kalle Aktiengesellschaft.

"What Zahn was attempting to do was to improve photochemical methods which had been used prior to the present invention, and the one which attained universal acceptance was the use of colloidal layers such as albumin or gelatin, sensitized with dichromates. These sensitized layers have a very limited shelf life, and the so-called 'dark hardening effect' starts immediately after the application of the dichromate-sensitized colloidal layers to the surface and proceeds when the plates are stored in the dark. Under elevated temperatures and high humidity, such light sensitive layers will become insoluble in water or suitable developers within a matter of several hours after they have been coated. When such layers are exposed to light, the tanning effect of the dichromate is rapidly accelerated."

On this aspect of the case, appellant contends here, as he did below, that Zahn's work constituted nothing more than an unpublished, unsuccessful, abandoned experiment, and that since the work done by Zahn had no utility whatsoever, the proviso of Section 3 of Public Law 380 is inapplicable because Zahn never made an "invention" as this term is used in said Section 3.

Appellant does not seem to dispute or challenge the board's statement that the composition of matter as claimed was produced in Germany before January 1, 1946. It is a fair inference from appellant's brief that certain of the compounds of the present invention, as claimed, were synthesized by Zahn. There is no indication or suggestion which of claims 1, 3, 11, 40, 41, 44, 51, 52 to the composition of matter define a compound not taught by Zahn.

Thus the only question at issue on this ground of rejection is whether appellant's argument is valid that Zahn made no "invention," within the meaning of the proviso to Section 3 of Public Law 380 when no utility is indicated.

It is self evident that if the compositions of matter produced by the Zahn synthesis come within the terms of appellant's claims, those compositions must be the same invention. In re Shackell, 194 F.2d 720, 39 CCPA 847. That rule as applied to publications is clearly ap-

---

3. This proviso, in pertinent part reads as follows:

"Sec. 3. Nationals of Germany and Japan may hereafter apply for and obtain patents in the United States for their inventions in accordance with the patent laws and enjoy the rights and privileges thereof: * * * *And provided further,* That, except for patents based on applications filed in the United States Patent Office prior to the date of enactment of this Act, patents may not be applied for or obtained, or if obtained, shall not be valid, for any invention made, or upon which an application was filed by any such national, before January 1, 1946, in Germany or Japan or in the territory of any other of the Axis Powers or in any territory occupied by the Axis forces."

plicable here. Appellant's arguments as to lack of disclosure of utility were rejected by the court in the Shackell case, and those arguments are here rejected for the same reasons.

The compositions of matter claimed in claims 1, 3, 11, 40, 41, 44, 51 and 52 were produced by Zahn prior to January 1, 1946 and were, for this reason, properly rejected under Section 3 of Public Law 380. The term used therein, "the invention made," clearly covers such compositions of matter. The fact that Zahn did not disclose any "utility" for such compounds does not change this result. He had made this "invention" whether or not utility was disclosed.

Claims 1, 3, 11, 40, 41, 44, 51 and 52 do not, in our opinion, distinguish patentably from those compositions admittedly made by Zahn and particularly identified in the affidavit of Dr. Schmidt. Whatever invention is defined in these claims is equally found in the earlier Zahn work. We, therefore, agree with the board that:

"The fact that appellant is now concerned with a different utilization of the compounds is irrelevant to the compound claims. The circumstance that, at the time of the work in Germany, the compounds produced did not exhibit the properties which were sought, does not vitiate the successful production of the compounds."

Appellant asserts, however, that since claims 12, 14, 22, 62, 63, 66, 73 and 74 define a pre-sensitized printing plate, and Zahn's attempt to make such a plate was a complete failure that these claims are not barred by the proviso of Section 3 of Public Law 380.

The board's decision points out that the only structural feature or limitation of these claims is a base material having a coating thereon comprising a particular diazo compound. These claims each cover "a presensitized printing plate comprising a base material having a coating thereon * * *."

The "coating" called for in these claims is a diazo compound such as was produced by Zahn before January 1, 1946.

The affidavit of Dr. Schmidt states that Zahn's work was done under his supervision and direction, so he was well informed as to results of this work. It clearly indicates that while Zahn made the compositions of matter there described, they were not used for the preparation of pre-sensitized printing plates. This affidavit, in pertinent part, reads as follows:

"That, moreover, at that time when Mr. Zahn conducted the experiments here in question, nobody would have thought of using compounds, whose suitability for hardening layers consisting of water-soluable colloids had been tested, for the preparation of pre-sensitized printing plates by coating aluminum foils or other sheet-like base supports with solutions of said compounds, omitting the colloid."

The invention which is claimed in the article claims is "a pre-sensitized printing plate." The invention claimed in the process claims is "a process for developing printing plates." There is nothing in the P. B. report 25,781 Frames 549 and 550, sheets 2 and 3 which discloses either such an article or such a process. We hold therefore that since the invention claimed in the article claims 12, 14, 22, 62, 63, 66, 73 and 74 is not disclosed in the P. B. report 25,781 there is no evidence that these claims are "for any invention made, * * * before January 1, 1946, in Germany * * *" within the meaning of Section 3 of Public Law 380.

We therefore affirm the board as to this ground of rejection of the composition of matter of claims 1, 3, 11, 40, 41, 44, 51 and 52 but reverse the board as to this ground of rejection of claims 12, 14, 22, 62, 63, 66, 73 and 74.

3. *Undue Breadth and Indefiniteness*

Claims 1, 12, 23, 51, 52, 73 and 74 were also rejected as indefinite and unduly

broad because of the expression "heterocyclic ring" therein. Since we have found all these claims except claims 12, 23, 73 and 74 to have been properly rejected under Section 3 of Public Law 380, we shall discuss this rejection as it applies to claims 12, 23, 73 and 74 only.

There are two reasons for this rejection. In the first place, the claims define a formula in which R is "selected from the group consisting of hydrogen, lower alkyl, substituted lower alkyl and aryl radicals," and then recite that "N, R and Y taken together form a heterocyclic ring." Appellant concedes the correctness of the board's statement that it would be impossible to meet the last limitation when R is hydrogen, but contends, nevertheless, that this type of language or definition is proper.

The second ground for this rejection arises from the fact that there is only a single example disclosed in the specification of a compound in which "N, R and Y taken together form a heterocyclic ring."

We look to the nature of the disclosure rather than to the number of examples in determining whether the expression in question is unduly broad. In re Cavallito et al., 282 F.2d 363, 48 CCPA 720.

Inasmuch, however, as claims 12, 23, 73 and 74 cover any and all heterocyclic rings whereas the only disclosures of such a compound is the disclosure of a five member ring containing only nitrogen and carbon, we agree with the board that these claims are broader than the invention disclosed.

4. *Failure to Point Out and Claim the Invention*

The board in rejecting claims 1, 12, 23, 51, 52, 73 and 74 on the ground of failure to particularly point out and distinctly claim the invention, said:

"We will sustain the rejection with respect to the use of the expression 'organic linkage' in claims 1, 12, and 23. In fact, this term is as broad as the entire field of organic chemistry and is wholly meaningless as a proper definition of a particular invention. The fact that Y cannot be completely unrestricted is indicated by the very language of non-elected claims 5, 16, and 27, wherein the n of the aliphatic diamine is limited to no more than 20."

Appellant's brief discusses this ground of rejection as follows:

In the specification are disclosed twenty-one examples of chemical compounds, each of which have common and dominant characteristics, i. e., each compound contains at least two of the groups.

in which X and $X_1$ are selected from the group consisting of $N_2$ and O and are different. Further, each of the compounds contains two $-\overset{R}{\underset{|}{N}}-$ groups or one $-\overset{R}{\underset{|}{N}}-$ group and one $-O-$ group. The remainder of each compound is the Y linkage, which is subject to wide variation. Thus, the twenty-one compounds disclosed include eleven completely separate and distinct types of organic linkages, which should be ample support for the definition of Y in the claims.

We agree with the conclusions of the board as respects these claims and affirm this rejection for the reasons set forth by the board in the above quoted passage.

## Conclusion

To summarize, we have considered the grounds of rejection in the decision of the Board of Appeals and hold:

(1) The rejection of claims 1, 3, 11, 12, 14, 22, 23, 25, 33, 40, 41, 44, 51, 52, 62, 63, 66, 73 and 74 as fully met by the cited Belgian patents is reversed.

(2) The rejection of claims 1, 3, 11, 12, 14, 22, 40, 41, 44, 51, 52, 62, 63, 66, 73 and 74 as barred by Section 3 of Public Law 380 is affirmed as to claims 1, 3, 11, 40,

41, 44, 51 and 52 and is reversed as to claims 12, 14, 22, 62, 63, 66, 73 and 74.

(3) The rejection of claims 12, 23, 73 and 74 as being too broad and indefinite because of the expression "heterocyclic ring" recited therein, is affirmed.

(4) The rejection of claims 1, 12 and 23, 51, 52, 73 and 74 as failing to particularly point out and distinctly claim the invention because of the use therein of the expression "organic linkage" is affirmed.

Claims on which rejections are affirmed are 1, 3, 11, 12, 23, 40, 41, 44, 51, 52, 73 and 74.

Claims on which rejections are reversed are 14, 22, 25, 33, 62, 63, and 66.

Modified.

WORLEY, C. J., and MARTIN, J., concur in result.

KIRKPATRICK, J., sat but did not participate in decision.