**Edward D. WEIL, Appellant,**

v.

**Charles D. FRITZ, Wilbur F. Evans and Anson R. Cooke, Appellees.**

**Appeal No. 77–557.**

United States Court of Customs and Patent Appeals.

Jan. 26, 1978.

Daniel C. Block, Richmond, Cal., Edward D. Weil, attorneys of record, for appellant, Jerry D. Voight, Herbert H. Mintz, Finnegan, Henderson, Farabow & Garrett, Washington, D. C., of counsel.

Alan H. Bernstein, Stanley H. Cohen, Caesar, Rivise, Bernstein & Cohen, Ltd., Philadelphia, Pa., attys. of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal by Weil,[1] the junior party, from the decision of the Patent and Trademark Office Board of Patent Interferences (board) which awarded priority of invention to Fritz et al. (Fritz),[2] ruling that Fritz was entitled to the benefit of an earlier application with a filing date before the earliest date asserted by Weil, his filing date. We reverse and remand.

## Background

The subject matter of the interference is defined by the sole count which reads as follows:

A method for the inhibition of plant growth which comprises applying thereto an effective amount of 2–chloroethylphosphonic acid [hereafter 2–CEPA].[3]

The chronology of applications is as follows:

| Party Fritz | Party Weil |
| --- | --- |
| Application Serial No. 617,860 (hereafter Fritz I) filed February 23, 1967; abandoned December 1, 1969 applicants: Fritz and Evans | |
| Application Serial No. 693,698 (hereafter Fritz II) filed December 27, 1967; abandoned April 2, 1970 continuation-in-part of Fritz I applicants: Fritz and Evans (amendment approved March 27, 1970 adding Cooke as joint inventor) | |

1. Application Serial No. 826,653, filed May 21, 1969, for "2–Chloroethylphosphonic Acid as a Plant Growth Regulator." The real party in interest is Stauffer Chemical Company.

2. Application Serial No. 221,803, filed January 28, 1972, for "Method for the Inhibition of Plant Growth" (hereafter Fritz IV). Fritz's earlier applications are described in the text, infra. The real party in interest is Amchem Products, Inc., a division of Union Carbide Corporation.

3. The count is identical to claim 1 of Fritz IV and claim 11 of Weil. 2–CEPA is a prior art compound.

4. The burden of proof is defined in 37 CFR 1.257(a):

§ 1.257 Burden of proof.
(a) The parties to an interference will be presumed to have made their inventions in the chronological order of the filing dates of their applications for patents involved in the interference or the effective filing dates which such applications have been accorded;

Application Serial No. 826,653 filed May 21, 1969
Application Serial No. 869,386 (hereafter Fritz III) filed October 24, 1969 continuation-in-part of Fritz II applicants: Fritz, Evans, and Cooke
Application Serial No. 221,803 (Fritz IV) filed January 28, 1972 division of Fritz III applicants: Fritz, Evans, and Cooke

The interference was declared on September 7, 1971, between Weil and Fritz III. In the declaration of interference, the patent interference examiner accorded Fritz III the benefit of Fritz I and II, making Weil the junior party. Fritz thereafter filed Fritz IV and moved to substitute Fritz IV for Fritz III.

Weil moved to shift the burden of proof,[4] i. e., to deny Fritz III the benefit of the filing dates of Fritz I and II under 37 CFR 1.231(a)(4),[5] on the ground that Fritz I and II "are not consistent regarding inventorship with the later-filed application [Fritz III]."

The primary examiner granted Fritz's motion to substitute Fritz IV, awarding that application the benefit of Fritz I, II, and III, and denied Weil's motion to shift the burden of proof, ruling that Fritz IV was entitled to the earlier dates under 35 U.S.C. § 120 [6] because the inventorship in

and the burden of proof will rest upon the party who shall seek to establish a different state of facts.

5. § 1.231   Motions before the primary examiner.

(a) Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:

\* \* \* \* \* \*

(4) To be accorded the benefit of an earlier application or to attack the benefit of an earlier application which has been accorded to an opposing party in the notice of declaration. \* \* \*

6. § 120.   Benefit of earlier filing date in the United States.

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by *the same inventor* shall have the same effect, as to such invention, as though

Fritz II had been properly corrected under 35 U.S.C. § 116.[7] The primary examiner cited *In re Schmidt*, 293 F.2d 274, 48 CCPA 1140, 130 USPQ 404 (1961), as "completely apposite here."

Weil petitioned the Commissioner to review the action of the primary examiner in refusing to shift the burden of proof. The Commissioner, denying Weil's petition, stated: "The question of burden of proof is ancillary to priority and is reviewable at final hearing by the Board of Patent Interferences, and in the courts if desired."

Weil petitioned this court for a writ of mandamus ordering the Commissioner to grant the motion to shift the burden of proof. We denied that petition. *Weil v. Dann*, 503 F.2d 562, 183 USPQ 300 (Cust. & Pat.App.1974).

Fritz, the senior party, then took testimony-in-chief and Weil took rebuttal testimony. After Fritz's testimony-in-chief, Weil filed a second motion to deny Fritz IV the benefit of the filing dates of Fritz I and II on the following basis:

> Testimony adduced from witnesses of the party Fritz et al., during its testimony-in-chief, has revealed, for the first time in this interference, that:

1. Long prior to the filing of the earliest of the aforementioned applications, Fritz et al contemplated a preferred mode of carrying out the method of the count;

2. The said preferred mode was the best mode contemplated by Fritz et al for carrying out the invention defined by the count; and

3. Notwithstanding the mandate of 35 U.S.C. § 112, first paragraph [8], Fritz et al did not disclose the best mode known to them in either of the aforementioned applications. [Footnote omitted.]

\* \* \* \* \* \*

The count \* \* \* pertains to a method of inhibiting plant growth by applying 2-chloroethylphosphonic acid [2-CEPA]. \* \* \*

The [2-CEPA] is soluble in water and is normally applied to the plants in the form of an aqueous solution. \* \* \*

\* \* \* \* \* \*

The testimony reveals that by no later than the end of 1965, the party Fritz et al and others at Amchem regarded the 2–chloroethylphosphonic acid to be unstable and susceptible to decomposition when contained in water solution having a pH greater than about 4.5. The evidence

---

> filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. [Emphasis added.]

The text of 35 U.S.C. § 112, first paragraph, is in note 8, infra.

7. § 116. Joint inventors.

> When an invention is made by two or more persons jointly, they shall apply for patent jointly and each sign the application and make the required oath, except as otherwise provided in this title.

> If a joint inventor refuses to join in an application for patent or cannot be found or reached after diligent effort, the application may be made by the other inventor on behalf of himself and the omitted inventor. The Commissioner, on proof of the pertinent facts and after such notice to the omitted inventor as he prescribes, may grant a patent to the inventor making the application, subject to

the same rights which the omitted inventor would have had if he had been joined. The omitted inventor may subsequently join in the application.

> Whenever a person is joined in an application for patent as joint inventor through error, or *a joint inventor is not included in an application through error*, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes. [Emphasis added.]

8. § 112. Specification.

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and *shall set forth the best mode contemplated by the inventor of carrying out his invention.* [Emphasis added.]

further shows Fritz et al contemplated that the application of the acid material to plants in water solution is preferably effected under certain operating conditions to prevent or avoid the detrimental effects of such decomposition. [Footnote omitted.]

Specifically, it was contemplated by Fritz et al that solution conditions be used which would maintain the pH below about 4.5 and/or that a spray or application solution of 2–chloroethylphosphonic acid be applied to the plants promptly after formulating the spray solution, particularly if the solutions were made up with neutral or alkaline water.

Fritz et al, and others at Amchem, clearly considered the pH sensitivity of water solutions of 2–chloroethylphosphonic acid to be a significant factor in proper use of the acid in accordance with the method of the count. They determined a preferred operating condition well prior to their earliest application filing date. The testimony fully supports the contention herein, and the most exhaustive inspection of the two earliest Fritz et al applications will not locate any reference to the contemplated best mode of carrying out the method of the count.[7]

[7] The first indication of any type in the Fritz et al applications of any sort of 2–chloroethylphosphonic acid stability problem in water solutions appears in the *third* Fritz et al application. * * · * [Footnote in original.]

Failure to advise potential users of the method of the count, in either of the first two Fritz et al applications, of important preferred operating conditions, i.e., maintaining solutions of 2–chloroethylphosphonic acid at a pH of less than about 4.5 and using the solutions promptly, constitutes failure to disclose a known best mode, in contravention of the provisions of 35 U.S.C. § 112. This failure to disclose deprives Fritz et al of the right to receive the benefit of the filing dates of these applications under 35 U.S.C. § 120.

Consideration of Weil's second motion was deferred to final hearing.

### The Board

The board sustained the primary examiner's denial of Weil's motion to shift the burden of proof (the first motion to deny the benefit of Fritz I and II). The board's opinion on this issue was:

Weil, in urging that Fritz is not entitled to benefit of Fritz I or Fritz II, asserts (main brief, page 14):

Implicit from the rationale underlying the party Weil's position advanced above are two critical factors. First, there is a difference between (i) converting, as contemplated by 35 U.S.C. § 116, the inventorship in a *single, given* application, and (ii) obtaining, under the provisions of 35 U.S.C. § 120 the benefit of the filing date of an earlier filed application where the inventorship entity has been changed in the later filed application. Second, in obtaining the benefit of an earlier filed application, there is an important difference between joining (i) too many, and (ii) too few inventors in the earlier filed case.

and concludes (reply brief, page 8):

. . . It is apparent that under these circumstances, absent entitlement to the first application [Fritz I], Fritz et al cannot benefit from the second application [Fritz II] because of its fatally defective declaration.

We disagree. From a study of the details of pertinent cases, and comparison of them to the situation here, it is our opinion that Fritz was properly accorded at least the filing date of Fritz II as his effective filing date, which date is prior to the effective filing date of Weil.

Both parties discuss in their briefs a significant case relating to the issue of conversion: *In re Schmidt,* 48 CCPA 1140, 293 F.2d 274, 130 USPQ 404 (1961). This case holds that 35 USC 116 is "remedial in nature and as such should be liberally construed in order that 'errors' may be readily rectified." *Schmidt* elaborates ([48 CCPA at 1148, 293 F.2d at 279,] 130 USPQ [at] 409–10):

It is, we believe, the correct interpretation of congressional intent that the expression "error * * * without any deceptive intention" in section 116 was intended not only to replace the more cumbersome expression "inadvertence, accident or mistake" previously used but was intended to relieve applicants from the narrow application of the old terms as the courts had construed them. Every indicator of legislative intent points in that direction.

The term "the same inventor" as used in section 120 does not have the literal, narrow technical meaning the solicitor would have us assign to it. It must be construed with all other relevant sections of the statute, including sections 116 and 256 and thus it embraces the possibility permitted by sections 116 and 256 that the earlier application may be corrected thereunder by changes in the name or names of the applicants under the conditions stated in section 116.

We hold, therefore, that appellant was entitled under section 116 to correct the errors in the intermediate application filed in the names of joint inventors and under section 120 was entitled as "the same inventor" to the benefits of the filing dates of the earlier co-pending applications . . . .

We find nothing in the statute (35 USC 116), the decisions of our appellate tribunals or the Rules of Practice (37 CFR 1.45) which supports Weil's two basic contentions noted above. *Schmidt* makes it clear that the liberal provisions of 35 USC 116 apply equally to those conversions affecting benefit pursuant to 35 USC 120. Nor do we find authority for attaching any significance to the difference between joining "too many" or "too few inventors." No reason is seen to exempt the instant case from the liberal provisions outlined in *Schmidt*. Compare, inter alia, *Patterson v. Hauck,* 52 CCPA 987, 341 F.2d 131, 144 USPQ 481 (1965); and *Ex parte Lechtenberg,* 146 USPQ 551 (Bd.App.1964). Manifest lack of diligence may provide basis for improper

conversion. *Van Otteren v. Hafner,* 47 CCPA 993, 278 F.2d 738, 126 USPQ 151 (1960). However, no such lack of diligence on the part of Fritz has been alleged by Weil or is evident here.

We therefore find no improper conversion on the part of Fritz which would deny him senior party status.

Next, the board considered Weil's second motion to deny the benefit of the filing dates of Fritz I and II. The board's opinion on this issue was:

A party to an interference "is entitled to the benefit of the filing date of a previously filed application when the requirements of 35 U.S.C. 120 are satisfied." *Martin v. Johnson,* [59 CCPA 769,] 454 F.2d 746, 172 USPQ 391 (CCPA 1972). Compare *Kawai v. Metlesics,* 480 F.2d 880, 178 USPQ 158 (CCPA 1973). Section 120 requires that the application of whose filing date the benefit is sought discloses the invention " . . . in the manner provided by the first paragraph of section 112 of [Title 35]" and § 112, first paragraph, requires, inter alia, that "[t]he specification . . . shall set forth the best mode contemplated by the inventor of carrying out his invention."

Weil would have us look into Fritz' benefit applications to determine whether the "best mode" requirement of § 112 has been complied with. However, the prevailing authority is that the issue of "best mode" is not "ancillary" to priority and, therefore, this Board cannot consider the issue. *Thompson v. Dunn,* 35 CCPA 957, 166 F.2d 443, 77 USPQ 49 (1948).* We

* We recognize that the *Thompson* decision was based on R.S. 4888 which preceded Title 35. However, from a comparison of the two statutes, we find no reason to conclude that a different result should now follow. [Footnote in original.]

note that Weil has not alleged that the enabling requirement of § 112, as discussed in *Martin* [*v. Johnson,* 59 CCPA at 775, 454 F.2d at 751] 172 USPQ [at] 395, has not been met by Fritz.

Accordingly, Weil's motion * * * is dismissed as being drawn to subject mat-

ter not proper for consideration by this Board pursuant to 37 CFR 1.258.[9]

\* \* \* \* \* \*

From the record before us, and within the limits of our jurisdiction, we hold that Fritz is entitled to an effective filing date no later than the filing date of Fritz II.

Thus, priority of invention was awarded to Fritz because Weil stood on his filing date which was later than that of Fritz II.

Reconsideration was denied, but the board commented on Weil's request for reconsideration as follows:

We in no way held, as misconstrued by Weil, that we are "in agreement [with Weil] that the party Fritz et al. is not entitled to the benefit of the first Fritz et al. application [Fritz I]." We held, rather, that inasmuch as Fritz et al. are entitled to the benefit of Fritz II, the question of whether they are entitled to the benefit of Fritz I is of no moment in this case.

Nor has Weil cited authority to support his present contention that the holding in *Thompson v. Dunn* (cited in our decision should be limited to the involved application as opposed to a benefit application. Moreover, the prevailing authority is contra. In considering whether an application supports the counts, the same requirements apply whether it is the involved application or one whose benefit is sought. *Noyce v. Kilby*, 57 CCPA 1156, 416 F.2d 1391, 163 USPQ 550 (1969); cert. den. [400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45] 167 USPQ 257 [(1970)].

---

9. § 1.258 Matters considered in determining priority.

(a) In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patentability of a claim generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the nonpatentability of the claim to the opponent will necessarily result in the conclusion that the party raising the question is in fact the prior inventor on the evidence before the Office, or relates to matters which have been determined to be ancillary to priority and must be considered. A party shall not be entitled to raise such nonpatentability unless he has duly presented a motion for dissolution under § 1.231 upon such ground or shows good reason (e. g., that such nonpatentability became evident as a result of evidence extrinsic to an involved application) why such a motion was not presented; however, to prevent manifest injustice the Board of Patent Interferences may in its discretion consider a matter of this character even though it was not raised by motion under § 1.231.

(b) At final hearing a party shall not be entitled to urge consideration of a matter relating to the benefit of an earlier application of his own or of another party unless he has presented such matter in connection with a motion under § 1.231(a)(4), or shows good reason why it was not so presented.

## OPINION

### The Issues

The issues are:

(1) Whether Fritz IV is entitled under 35 U.S.C. § 120 to the benefit of Fritz II's filing date in view of the amended inventive entity in Fritz II?

(2) Whether the "best mode" question— the alleged nondisclosure in Fritz II of the "best mode" as required by 35 U.S.C. § 112, first paragraph, and incorporated in 35 U.S.C. § 120—is ancillary to priority (i. e., within the board's jurisdiction) where Fritz IV was accorded the benefit of Fritz II?

### The First Issue

Noting that the board "relied heavily" on *In re Schmidt*, supra, Weil contends that "there is more to this issue than merely adding too many [sic, too few?] inventors to an application as will be hereinafter set out." Weil then attacks the board's decision with respect to this issue on three grounds.

■ The first ground is that the conversion declaration filed in Fritz II, which states that Fritz II is a continuation-in-part of Fritz I, is "fatally defective" because Fritz I was "*never converted to three inventors*." (Weil's emphasis.) As we understand it, Weil contends that the conversion declaration filed in Fritz II, amending the

inventive entity to three applicants, is defective because it claims the benefit of Fritz I, filed by two applicants and never amended.

This argument must fall in light of 35 USC 120, supra note 6, as interpreted by this court in *In re Schmidt.* That case involved an application (Schmidt III) filed by Schmidt as sole applicant. Under § 120, Schmidt III claimed the benefit of Schmidt I, filed by Schmidt sole, and Schmidt II, filed by Schmidt and five others. During the prosecution of Schmidt III, affidavits were submitted which established that the five other applicants had joined in Schmidt II "through error * * * without any deceptive intention" (35 U.S.C. § 116, third paragraph, supra note 7). The inventive entity in Schmidt II was not amended in fact.[10] Nevertheless, as stated in *Schmidt,* 293 F.2d at 279, 48 CCPA at 1148, 130 USPQ at 409–10 (quoted supra in the board's opinion), Schmidt III was entitled in law to the benefit of the filing dates of Schmidt I and II under 35 U.S.C. § 120. The term "the same inventor" in § 120 was broadly interpreted to embrace the possibility permitted by § 116, third paragraph. Even though Schmidt II was not amended in fact, the procedure employed was legally equivalent to such an amendment. *In re Schmidt* was decided correctly and it disposes of Weil's argument.[11]

■ Weil's second ground of attack, as stated in his main brief on appeal, is: "[Fritz II] is defective in that its *oath* or declaration does not aver that such subject matter common to the Fritz et al. I application and Fritz et al. II application is not barred by any activity more than one year prior to the Fritz et al. II application filing date." (Emphasis added.)

Weil's contention is not material to the question of Fritz IV's entitlement under § 120 to the benefit of Fritz II. The applicant's *oath* is not a requirement of § 112,

first paragraph, but of 35 U.S.C. § 115; therefore, the sufficiency of Fritz II's oath is not material under § 120, which incorporates only the requirements of § 112, first paragraph.

■ Weil's third (and final) ground of attack is: "The count of the Interference is not patentable to the party Fritz et al. by reason that the invention described in the count was invented by another prior to the filing date of Fritz et al. III and as such is prior art in the sense of 35 U.S.C. 102(g)." Weil generates this argument by linking three things: (1) the board's reconsideration opinion which stated that the question of whether Fritz IV was entitled to the benefit of Fritz I "is of no moment in this case;" (2) Weil's own "unavoidable conclusion," from the board's foregoing statement, that Fritz I is by "another inventor" under 35 U.S.C. § 102(g); and, (3) *In re Bass,* 59 CCPA 1342, 474 F.2d 1276, 177 USPQ 178 (1973).

Weil's argument is unsound because the board was correct—*the question of whether Fritz IV is entitled to the benefit of Fritz I is immaterial in this interference.* See note 11, supra. Weil has *no basis* for concluding that Fritz I is evidence that the invention of the count was made "by another" and therefore is prior art under 35 U.S.C. § 102(g). To the contrary, the amendment of Fritz II indicates that the subject matter of the count was invented by the three applicants (Fritz, Evans, and Cooke). Therefore, any disclosure in Fritz I of the invention of the count would be a disclosure of the three applicants' own invention. "But certainly *one's own invention,* whatever the form of disclosure to the public, may not be prior art against oneself, *absent a statutory bar.*" *In re Facius,* 408 F.2d 1396, 1406, 56 CCPA 1348, 1358, 161 USPQ 294, 302 (1969) (emphasis in original).

We *affirm* the board on the first issue.

10. The *Schmidt* opinion implies this, and we have verified it in the *Schmidt* record.

11. We note, of course, that in the instant case Fritz IV need only receive the benefit of Fritz II, and the inventive entity in Fritz II *was*

amended. It is immaterial that the conversion declaration, amending the inventive entity in Fritz II, was filed after Fritz I's abandonment date.

*The Second Issue*

According to Weil's second motion (to deny Fritz IV the benefit of the filing dates of Fritz I and II), 2–CEPA is soluble in water and is "normally" applied in an "aqueous solution." The motion alleged that Fritz, prior to Fritz I's filing, "regarded [2–CEPA] to be unstable and susceptible to decomposition when contained in water solution having a pH greater than about 4.5" and that Fritz contemplated using solutions "which would maintain the pH below about 4.5 and/or that a spray or application solution of [2–CEPA] be applied to the plants promptly after formulating the spray solution, particularly if the solutions were made up with neutral or alkaline water." Weil urged that nondisclosure of these "preferred operating conditions" constituted failure to disclose a "known best mode, in contravention of 35 U.S.C. § 112," depriving Fritz IV of "the right to receive the benefit of the filing dates of [Fritz I and II] under 35 U.S.C. § 120."

Fritz II, the material application (see note 11, supra), has Examples 35 and 42 which describe spraying certain plants with "aqueous solutions" of 2–CEPA, without disclosure of pH sensitivity. Hence, this nondisclosure of the alleged "preferred operating conditions" for 2–CEPA was the basis of Weil's second motion.[12]

The board, citing *Thompson v. Dunn*, 166 F.2d 443, 35 CCPA 957, 77 USPQ 49 (1948), understandably held that "the issue of 'best mode' is not 'ancillary' to priority" and dismissed this motion on jurisdictional grounds as raising an issue "not proper for consideration by this Board pursuant to 37 CFR 1.258 [supra note 9]."

Weil attacks the board's decision as "clearly erroneous in view of recent developments and a clear reading of 35 U.S.C. § 120." His principal argument is:

The statutory basis for applicant(s) to obtain the benefit of an earlier filing date is 35 USC 120. Section 120 states in part that the earlier application must disclose the invention in the manner provided by the first paragraph of Section 112, and Section 112 unequivocally states in clear and unambiguous terms that the "specification . . . shall set forth the best mode contemplated by the inventor of carrying out his invention." It is not seen how the Board can avoid this issue with this clear and unequivocal language in the statute. It is believed that this portion of the statute clearly conveys jurisdiction on the Board when the question of best mode is raised when an applicant requests and is granted relief under the provisions of 35 USC 120.[13]

Weil distinguishes *Thompson v. Dunn* on the ground that Thompson was not claiming the benefit of an earlier U.S. application.

Fritz, on the other hand, defends the board's decision by quoting the relevant portion of *Thompson v. Dunn*, which we designate as [A]:

[A]

Counsel for appellee [Dunn] argue that as appellant [Thompson] considered the machine built by his associate McGihon to embody the best form of his invention and that, since appellant did not disclose

12. We observe, as the board did, that Weil has not argued noncompliance by Fritz II with the enablement (how to make and use) requirement of the first paragraph of § 112. At oral argument, the possibility was discussed that the alleged disclosural defect could be characterized as nonenablement, but Weil's counsel insisted: "We are not challenging the enablement of any of these applications of Fritz." Weil's counsel offered no further explanation. However, he had stated earlier that the pH sensitivity of 2–CEPA was described in a "technical brochure" published by Fritz's assignee in March, 1967 (prior to Fritz II). Cf. *In re Metcalfe*, 56 CCPA 1191, 1196, 410 F.2d 1378, 1381,

161 USPQ 789, 791 (1969). We also observe that Weil has not argued that the alleged nondisclosure of the best mode in Fritz II constituted fraud. Cf. *Langer v. Kaufman*, 465 F.2d 915, 59 CCPA 1261, 175 USPQ 172 (1972); *Norton v. Curtiss*, 57 CCPA 1384, 433 F.2d 779, 167 USPQ 532 (1970); *Steierman v. Connelly*, 192 USPQ 433 (Bd. Pat. Intf. 1975), *modified on reconsideration*, 192 USPQ 446 (1976).

13. Weil refers to D. McDougall, *The Courts Are Telling Us: "Your Client's Best Mode Must Be Disclosed,"* 59 J. Pat. Off. Soc'y 321, 333–34 (1977), which advances a similar argument.

that machine in his application, he has not complied with Sec. 4888, R.S. (U.S.C., title 35, sec. 33) which requires that an inventor shall disclose "the best mode in which he has contemplated applying" the principle of his invention. *That argument does not relate to priority of invention, but merely to appellant's right to obtain a patent.* [Fritz's emphasis.] Accordingly, it cannot properly be considered by this court in an interference proceeding. [35 CCPA at 964, 166 F.2d at 447–48, 77 USPQ at 53.]

And, in response to Weil's argument that *Thompson v. Dunn* is distinguishable, Fritz quotes this portion of *Mahan v. Doumani,* 333 F.2d 896, 902, 51 CCPA 1516, 1522, 142 USPQ 19, 23 (1964), which we designate as [B]:

[B]

The [parent] 1944 application [of appellee, Doumani], in order to support the counts, need not list the specific fuels of the counts as "the best mode contemplated by the inventor of carrying out his invention" (35 U.S.C. § 112). Only a "written description of the invention" must be found in the 1944 application when considered in its entirety. See *Hall v. Taylor* (PA 7158), 51 CCPA 1420, 332 F.2d 844, 141 USPQ 821 [(1964)].

At oral argument, Fritz's counsel also cited two sentences in *Squires v. Corbett,* 560 F.2d 424, 433, 194 USPQ 513, 519 (Cust. & Pat.App.1977), which we designate as [C]:

[C]

The "count" * * * is merely the vehicle for contesting priority which, in the opinion of the Commissioner, effectively circumscribes the interfering subject matter, thereby determining what evidence will be regarded as relevant on the issue of priority. The "count," as distinguished from a party's "claim," need not be patentable to either party in the sense of being fully supported by either party's disclosure.

Based on [C], counsel urged that "looking for best mode is like looking for surplusage," that "there is no need to have best mode disclosed provided you have a written description of the invention * * * in the earlier application," and that the issue is what is meant by "the right to rely on a constructive reduction to practice—in an earlier-filed application—of the count?"

■■■ The second issue, as stated earlier, is whether the best mode question—the alleged nondisclosure in Fritz II of the best mode as required by 35 U.S.C. § 112, first paragraph, and incorporated in 35 U.S.C. § 120—is ancillary to priority (i. e., within the board's jurisdiction [14]) where Fritz IV was accorded the benefit of Fritz II. We hold that it is.

Weil's second motion sought to deny Fritz IV the benefit of Fritz II's filing date. Thus, it, like Weil's first motion, was a motion to shift the burden of proof,[15] that is, it sought to shift the burden of proof from Weil to Fritz. The motion, if granted, would make Weil the senior party and Fritz the junior party because it would deny Fritz the benefit of Fritz II and Weil's application was filed before Fritz III.

Fritz had achieved senior-party status by accordation of the benefit of Fritz II's filing date under the provisions of 35 U.S.C. § 120, which incorporates the entire first paragraph of 35 U.S.C. § 112,[16] so Weil

14. 35 U.S.C. § 135(a) limits the board's jurisdiction to "[t]he question of priority of invention," but, as explained by this court in *Hendrickson v. Ronning,* 76 F.2d 137, 140, 22 CCPA 1040, 1045, 25 USPQ 42, 45 (1935), "[i]t was found, early, that certain matters ancillary to the question of priority were immediately involved in such proceedings and, hence, these were considered."

15. Defined in 37 CFR 1.257(a), supra note 4.

16. *Swain v. Crittendon,* 332 F.2d 820, 823, 51 CCPA 1459, 1463, 141 USPQ 811, 813 (1964),

states that "where an applicant alleges that he is entitled to rely upon a previously filed application under section 120, the parent application must comply with the first paragraph of 35 U.S.C. § 112, which provides: [quoting the *entire* paragraph]." Accord, *Martin v. Johnson,* supra, cited by the board. Fritz proposes a definitional, rather than a jurisdictional, issue: what is necessary to constitute a prior constructive reduction to practice (of the invention of the count)? *Automatic Weighing Machine Co. v. Pneumatic Scale Corp.,* 166 F. 288, 297 (CA1 1909) defines "constructive reduction to

based his attack on one of the requirements underlying that statutory benefit accordation procedure.

This court, in *Myers v. Feigelman*, 455 F.2d 596, 600, 59 CCPA 834, 840, 172 USPQ 580, 584 (1972), held that the question of the burden of proof on a junior party in an interference was ancillary to priority because "it is a question which is 'logically related' to the basic, jurisdiction-giving question of priority because it should be decided, logically, before the board or this court can pass on the sufficiency of the junior party's proofs." [17] The same reasoning, with even greater force, applies to the question of which party has the burden of proof.[18]

With regard to *Thompson v. Dunn*, supra [A], it is true, as [A] states, that the best mode disclosure requirement (in what is now § 112, first paragraph) relates to an applicant's "right to obtain a patent." But [A] does not recognize that the best mode disclosure requirement has other functions, as in this case, where it is one of the conditions precedent in the § 120 benefit-accordation procedure,[19] a procedure that here determines which party has the burden of proof (a question that must be logically related to the jurisdiction-giving issue of priority). Hence, we hold that when a § 120 benefit is sought, the best mode dis-

closure requirement is ancillary to priority. Therefore, the conclusion of law in *Thompson v. Dunn*, supra [A], is overruled to the extent that it is inconsistent with our present holding.

For the same reason, the conclusion of law in *Mahan v. Doumani*, supra [B], also is overruled to the extent that it is inconsistent with our present holding.

Finally, Fritz argues that the board's decision is supported by *Squires v. Corbett*, supra [C], but the last sentence of [C] refers to "phantom" count practice and modified patent claim practice, special situations not present here. Furthermore, [C] must be considered with the ultimate conclusion of law in *Squires v. Corbett*:

> We conclude that for an applicant to have a right to copy a patent claim he must have support for the full scope of the claim. See *Hunt v. Treppschuh* [523 F.2d 1386,] at 1389, 187 USPQ [426,] at 429 [Cust. & Pat.App.1975]. This conclusion rests on the recognition that the right to make a claim in a pending application, even for purposes of interference, depends, as it does with all pending claims, on compliance with the requirements of 35 U.S.C. § 112, first paragraph. There is no other standard.   *   *   *
> [560 F.2d at 435, 194 USPQ at 520.]

practice" as the filing of "a complete and allowable application;" therefore, under that view, a prior constructive reduction to practice is a previously-filed "complete and allowable application." However, as *Swain* and *Martin* recognize, § 120 provides a statutory definition of what constitutes a prior constructive reduction to practice. Furthermore, as *Hunt v. Treppschuh*, 523 F.2d 1386, 1389, 187 USPQ 426, 429 (Cust. & Pat.App.1975), explains, "the § 112, first paragraph, requirements need only be met for an *embodiment* within the count" in the special situation where the count is drawn to a genus and the previously-filed application discloses only a species thereof.

17. The "logical relationship" test was applied again in *Nitz v. Ehrenreich*, 537 F.2d 539, 543, 190 USPQ 413, 416 (Cust. & Pat.App.1976), where this court held: "Determination of the presence or absence of interfering subject matter is 'logically related' to the jurisdiction-con-

ferring issue of priority because that determination necessarily precedes a priority award."

18. 2 Rivise and Caesar, *Interference Law and Practice*, § 251, at 1010 (1943), state that "the questions raised by motion to shift the burden of proof are. *necessarily* ancillary   *   *   *." (Emphasis added.) *Weil v. Dann*, supra, referring to Weil's first motion to shift the burden of proof (alleging noncompliance with the "same inventor" requirement of § 120), states: "The issue raised by petitioner is ancillary to priority and is subject to consideration by the Board of Patent Interferences under 37 CFR 1.258(b)." 503 F.2d at 563, 183 USPQ at 300.

19. Of course, § 120 was enacted in the Patent Act of 1952, after *Thompson* (1948). The benefit provided by § 120, not specified in the prior statute, originated in *Godfrey v. Eames*, 1 Wall 317, 68 U.S. 317, 17 L.Ed. 684 (1864). See *In re Hogan*, 559 F.2d 595, 603, 194 USPQ 527, 535 (Cust. & Pat.App.1977).

Thus, our present holding is not inconsistent with *Squires v. Corbett.*

In view of the foregoing, the board should not have dismissed Weil's second motion for lack of jurisdiction. Accordingly, we *reverse* the board on the second issue, and we *remand* for further proceedings, including consideration of Weil's second motion on its merits (we express no view on the merits of that motion) and consideration of the priority testimony (for completeness, i. e., to obviate another remand).

### Summary

The board's decision on the first issue is *affirmed*; the board's decision on the second issue is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*